# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA NORTHERN DIVISION

| | |
|---|---|
| **MARK MCDOWELL,** ) | |
| ) | |
| **PLAINTIFF,** ) | CASE NO. 2:20-cv-00280 |
| ) | |
| v. ) | JURY TRIAL REQUESTED |
| ) | |
| **ALABAMA DEPARTMENT OF** ) | |
| **PUBLIC HEALTH,** ) | |
| ) | |
| **DEFENDANT.** ) | |

## COMPLAINT

**COMES NOW** the Plaintiff, Mark McDowell, by and through his undersigned counsel of record, and hereby doth complain and aver against the above-named Defendant, as set forth herein-below.

### I. JURISDICTION & VENUE

1. Plaintiff McDowell files this Complaint, institutes these proceedings, and invokes the jurisdiction of this Court under and by virtue of 28 U.S.C. §§ 1331 and 1334 (a)(4), as an action arising under the Act of Congress known as Title VII of the Civil Rights Act of 1964, (42 U.S.C. § 2000(e) et seq.), as amended by the 1991 Civil Rights Act, 42 U.S.C. 1981(a), 42 U.S.C. § 1201, et seq., and the Americans with Disabilities Act ("ADA") to obtain equitable relief, the costs of suit, including reasonable attorneys' fees, and damages suffered by the Plaintiff, due to the Defendant's discrimination against Plaintiff.

2. Plaintiff McDowell filed a charge of race discrimination with the EEOC in Birmingham, Alabama on August 23, 2019. Plaintiff received a right-to-sue on

January 27, 2020, giving Plaintiff the right to pursue this claim in federal court for 90 days after said receipt. (Exhibit A).

3. Venue is proper in the Middle Division of the Middle District of Alabama, since the alleged discriminating action of Defendant occurred in Montgomery County, Alabama.

## II. PARTIES

4. The named Plaintiff, Mark McDowell (hereinafter "Plaintiff" or "Mr. McDowell"), is a citizen of the United States and a resident of Montgomery, Alabama. Plaintiff is over the age of nineteen years.

5. The Defendant, Alabama Department of Public Health (hereinafter "Defendant" or "ADPH"), is an agency located in Montgomery County, Alabama. At all times relevant to this complaint, Plaintiff was employed by Defendant.

## III. STATEMENT OF FACTS

6. Mr. McDowell is an African-American male with a disability.

7. Mr. McDowell began working with ADHP in 1986 as a laborer in the mailroom under the merit system. Shortly afterward he was promoted to a computer trainee.

8. Throughout Mr. McDowell's employment, he has completed several highly skilled projects to include installing Wide-area network.

9. Mr. McDowell experience includes, but not exhaustively, the following:

    a. From 1997-2003, Plaintiff McDowell worked as Project Manager on one of the most vital projects to our nation's public health arena, in preparation to fight bioterrorism, namely Electronic Lab Results (" ELR"). It was part of the Public Health Network System, which itself is the key part of the Public Health Information System Network Management System ("PHINMS) and

also part of the Center for Disease Control ("CDC") that is responsible for the transmittal of laboratory results from major laboratories nationwide, to the State Central Office, physicians, hospitals, and the CDC and Prevention. The ELR Project has moved towards the nation's goal to establish online medical records. Mr. Harrison Wallace, the Director of Infectious Diseases Division, can and will verify Mr. McDowell work and the fact of him not having ever been selected for a promotion that Plaintiff McDowell disclosed Mr. McDowell interest in.

b. By the end of 2003, Plaintiff McDowell went to work for the Licensure and Certification Division of ALDPH, where Mr. McDowell's primary responsibility is Minimum Data Set for Centers for Medicaid/Medicare ("MDS") which is where Plaintiff McDowell currently remains. Mr. McDowell's responsibilities include encrypting data, creating secure communication, and server and client support for companies or clients who submit applications for reimbursement. Mr. McDowell's job is essentially to secure the servers and/or workstations by encrypting the data. This is extremely high-tech work, and no one can do it better than him. In fact, for the State of Alabama, Plaintiff McDowell is the QIES Security Officer.

c. Plaintiff McDowell also handles the on-guard security system, namely the badge security system, which allows access to the building and parking deck. This responsibility and all others mentioned above are high-level, skilled positions. Further Plaintiff McDowell is frequently called upon to train others and demonstrate the use of applications at the ADPH.

10. Unfortunately, despite all his high-level technical work, Plaintiff McDowell has not been immune to the race discrimination practiced against him at the ADPH, where the foundation of racism runs deep. In fact, reflecting upon a scary pattern and practice over the years, even though admittedly outside the statute of limitations, in 2008, James Coley, the Assistant Director in Technical Support at ADPH, stated to Mr. McDowell's face that, "I can't trust you niggers". Mr. Coley also stated to others, including to and around white employees, that "you have to be careful; you just can't trust these black people".

11. On one occasion, James Coley made such a racist statement in a freight elevator with Mr. McDowell present that the white co-employees also present seemed to be shocked. Plaintiff McDowell tried to ignore this blatant racism, but eventually did complain about these comments to the Director of Information Technology, namely John Heitman. Mr. Heitman's response to him was that "you're trying to play the race card". Again, this was beyond the statute, in 2007-2008, after Plaintiff McDowell had already begun complaining about non-promotions. In an email memo at that time, Plaintiff McDowell requested, as a remedy, that he be removed from being under James Coley and Tammy Mashburn. Their remedy involved having Mr. Michael Jones, the HR Department Representative, sit in on the meeting, believing they would not be so bold to make the negative comments they've previously made. As James Coley noticed Mr. Jones in the meeting, Mr. Coley said to Plaintiff McDowell, "What the hell is he doing in here for? You bring him in here to protect you?" Mr. Jones heard this from James Coley and only commented, "We are not going to have this kind of conversation in here".

12. In the next 12 years, including as recently as 2019-2020, Plaintiff McDowell was repeatedly denied promotions, or at least, not even considered for promotions Plaintiff McDowell had requested and/or expressed interest in, whereas less qualified white employees were selected for said promotions. One particular example involved a white male employee named Ron McClendon. Mr. McClendon's lack of technical skills made him dependent upon the people under him. Although his title and position was to supervise those employees, his lack of knowledge and skills with setting up servers, supporting servers, setting and supporting client work stations, where he had no experience or ability, had those employees performing the technical duties of the job he was unable to perform himself.

13. In addition, Mr. McClendon was not considered to be "reachable" on the State register, when he was promoted into the IT Specialist, Sr. position on March 15, 2018. Being reachable simply refers to the selection process used by the state for hiring new candidates and promoting interested and qualified current employees.

14. In 2015, there was a Caucasian employee promoted over him (this was after the conversion in which Plaintiff McDowell was last person left with that job title), and while Plaintiff McDowell already had his degree and years of experience with ADPH, the person hired, namely Mark Skelton, was then currently in school earning his degree. Further, after Mr. McDowell showed his interest in the available WAN Manager position to James Coley, Mr. Coley called Mark's direct supervisor, Terry Brown, into his office and offered him, Mr. Brown, the position. When Plaintiff McDowell would email or inquire about available positions that would become available, Mr. McDowell's emails would remain unanswered. This

was also the case when Plaintiff McDowell learned of the position being filled. He inquired about why he was not given the opportunity, just to see what improvements he could work on. Yet, Mr. McDowell never received an answer. It was never a title that Plaintiff McDowell was after; instead Plaintiff knew the work and could do the work.

15. An employee or individual seeking a promotion, or to be considered reachable, has "special privileges" and is given an advantage in the selection process when they possess a Schedule A letter/certification indicating the person/employee has a "handicapped" or "disabled" status. Having that Schedule A status qualifies the individual for consideration, under "5 CFR 213.3102 (u), Schedule A Hiring Authority, Appointment for Persons with Disabilities." This would automatically jump the person with the handicap or disability to the head of the availability list to be chosen for the position to which they applied. Plaintiff McDowell currently possesses a Schedule A letter, due to a bad back following several accidents years ago, which has developed into a degenerative disc. His Schedule A was issued to him on or around May 6, 2019 by the Alabama Department of Rehabilitation Services. Mr. McDowell's knowledge, skills, and longevity alone more than qualified him for any of the positions for which he, Plaintiff McDowell, applied, but additionally Plaintiff McDowell had the Schedule A letter advantage. This should have qualified Mr. McDowell as the "first pick" of the jobs Plaintiff McDowell had applied, for but for which he was denied the opportunity.

16. There were numerous other jobs for which Plaintiff McDowell applied in 2018-2019 and was far better qualified than the white co-employees who received those promotions over him. Those jobs included: (a) the supervisor position, an IT

Specialist job never offered to him; (b) the County Team Supervisor position, an IT Specialist position, never offered to him; (c) the IT Specialist position within the Email Division, never offered to him; and (d) an IT Specialist position with Network Management, involving switches, hubs, and routers. This position was never offered to Mr. McDowell either. These four job positions have all been promoted within the last 6 months, and Plaintiff McDowell never received any of these promotions. He was interviewed for two but not for the other two. Notwithstanding, Plaintiff McDowell believes he was the best qualified candidate for any of these positions. The candidates who got the job were all white, namely, Bradley Baker, Josh McCarthy, Brian Tacits, and Ronnie McClendon.

17. Thus, Plaintiff McDowell has repeatedly been denied opportunities for promotion at the ADPH, due to his African-American race. These opportunities for which Plaintiff McDowell was far better qualified should have come Mr. McDowell's way. Unfortunately, Mr. McDowell's race was unacceptable to the superiors whose position it is, and was, to make decisions for promotions within the ADPH. Further, the federal employees for whom Plaintiff McDowell worked loved him, but their support was inconsequential with Mr. McDowell's white, state managerial superiors at ADPH.

18. Plaintiff McDowell avers that he was subjected in 2018-2019 to a cold and hostile working environment by numerous snide comments towards him and he was also completely ostracized. Mr. McDowell was even also sometimes called "half a person" by his supervisor Terry Brown, smacking of the slavery term "three-fifths of a person".

19. Plaintiff McDowell is currently a Data Processing Specialist, and has been so for the past 15 years. This position is one of the lowest, top-out, paying IT jobs at ADPH, if not the lowest paying position. ADPH performed a conversion to move every person in Mr. McDowell's position over to IT Specialist Associates. That included every single person moved over **EXCEPT** Plaintiff McDowell, with twelve being Caucasian and only two African-American. The IT Specialist Associate position had a top-out pay of $5,000-$10,000 more a year than Mr. McDowell's current position. When Plaintiff McDowell questioned this move, Plaintiff McDowell was told by ADPH Human Resources Department that it wanted him to apply for this position. The State Personnel Department classified Mr. McDowell as being in the top 10 of its employees currently registered.

20. Based on the foregoing, Mr. McDowell affirms that he was subjected to illegal race discrimination in violation of Title VII, 42 U.S.C. § 2000(e) and 42 U.S.C. §§1981 and 1981(a). As a result, Mr. McDowell has lost valuable income and benefits. Mr. McDowell has also suffered mental and emotional distress with the continuing snide comments, insentive treatment and ostracization, and incurred the cost of an attorney's fee.

### IV. PLAINTIFF'S FIRST CAUSE OF ACTION
### RACE DISCRIMINATION

21. Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 20 above, the same as if more fully set forth herein, and further avers that the Defendant's actions towards him violated his right to be free of race discrimination in employment, in violation of Title VII of the Civil Rights Act of 1964, as amended, (42 U.S.C. § 2000(e), et seq.), and 42 U.S.C. §§ 1981 and 1981(a).

22. As a proximate cause of Defendant's afore-described actions in discriminating against Plaintiff, due to his race, Plaintiff was injured and damaged, as set forth in paragraphs 1 through 20 above. In addition, Plaintiff has suffered considerable mental and emotional anguish.

23. Plaintiff avers that he has pursued and exhausted his administrative remedies.

### PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff McDowell respectfully prays that this Court grant the following relief:

a) Judgment declaring that the Defendant discriminated against Plaintiff, on the basis of Plaintiff's race;

b) An order granting Plaintiff compensation for rights to which Plaintiff would have been entitled, had Plaintiff not been the victim of race discrimination, effective from the date of final judgment;

c) An award of compensatory damages, including for mental anguish, to which Plaintiff may be entitled;

d) An award of punitive damages, due to the egregious nature of the race discrimination practiced against Plaintiff, so openly tolerated, ratified and acquiesced in by the Defendant;

e) An award of all court costs and reasonable attorneys' fees, including those incurred for seeking administrative relief; and

f) Such further, other and different relief as the Court may deem appropriate and necessary.

### V. PLAINTIFF'S SECOND CAUSE OF ACTION
### RACE-BASED COLD AND HOSTILE WORKING ENVIRONMENT

24. Plaintiff repeats, realleges and incorporates by reference paragraphs 1 - 20 above, the same as if more fully set forth herein, and further avers that the Defendant's actions towards him violated his right to be free of a race-based cold and hostile working environment in employment, in violation of Title VII of the Civil Rights Act of 1964, as amended, (42 U.S.C. §2000(e), et seq.), as amended by the 1991 Civil Rights Act.

25. As specifics for the race-based cold and hostile work environment that Plaintiff suffered, Plaintiff cites the facts set forth particularly in the statement of facts above, paragraphs 1 - 20 above, and adds that said conditions were pervasive.

### PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully prays that this Court grant the following relief:

a) A judgment declaring that the Plaintiff was subjected to an egregious race-based hostile work environment;

b) An award of compensatory damages, including for mental anguish, to which Plaintiff may be entitled;

c) An award of punitive damages due to the egregiousness of Defendant's wrongdoing;

d) An award of all court costs and reasonable attorneys' fees, including those incurred for seeking administrative relief;

e) Such further, other and different relief as the Court may deem appropriate and necessary.

### VI. PLAINTIFF'S THIRD CAUSE OF ACTION
### DISABILITY DISCRIMINATION

26. Plaintiff McDowell repeats, realleges, and incorporates by reference paragraphs 1 through 20 above, the same as if more fully set forth herein and further avers that the Defendant failed to accommodate Plaintiff's disability by willfully, and/or maliciously, denying Plaintiff a reasonable accommodation, due to Plaintiff's physical handicap as above described.

27. The State of Alabama receives federal money, thus subjecting itself and its employees to the provision of the federal Rehabilitation Act.

28. Plaintiff McDowell also avers that Defendant's discrimination against him, due to his disability, or due to an incorrect perception by Defendant of a disability on the part of Plaintiff, violated the federal Rehabilitation Act, prohibiting disability discrimination. In fact, because of his disability and because of his race, Plaintiff was called at least 3 times that he was only "half a person" which was very insulting and demeaning.

29. Plaintiff has lost wages and benefits and suffered extreme mental anguish as a result of Defendant's discrimination against him, due to Plaintiff's disability and/or Defendant's incorrect perception of a disability on the part of the Plaintiff.

30. Plaintiff avers that he has pursued and exhausted his administrative remedies.

## **PRAYER FOR RELIEF**

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully prays that this Court grant the following relief:

a) Judgment declaring Plaintiff was discriminated against by the Defendant, due to his disability, or the incorrect perception by the Defendant that Plaintiff was disabled;

b) An award of compensation for all lost pay benefits and other rights, to which Plaintiff would have been entitled, had Plaintiff not been the victim of disability discrimination, effective the date of final judgment with back pay for the period that Plaintiff was denied promotion, and not receiving additional income;

c) An award of all court costs and reasonable attorneys' fees, including those incurred for seeking administrative relief;

d) An award of compensatory damages, including for mental anguish, to which Plaintiff may be entitled;

e) An award of punitive damages; and

f) Such further, other and different relief as the Court may deem appropriate and necessary.

## VI. JURY DEMAND

Plaintiff hereby requests trial by jury on all issues so triable.

Respectfully submitted this **23rd** day of **April, 2020.**

Mark McDowell, Plaintiff

Julian McPhillips (ASB-3744-L74J)
Counsel for Plaintiff
**MCPHILLIPS SHINBAUM, L.L.P.**
516 South Perry Street
Montgomery, Alabama 36104
(334) 262-1911
(334) 263-2321    FAX
julianmcphillips@msg-lawfirm.com

        <u>/s/*Tanika L2 Finney*</u>
Tanika Finney (ASB-1359-A23B)
Co-counsel for Plaintiff
Law Office of Tanika L. Finney
Of Counsel McPhillips Shinbaum, LLP
516 South Perry Street, Suite 3-A
Montgomery, AL 36104
(334) 603-1353
tanika@tlfinneylaw.com