IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MARK MCDOWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:20-cv-280-JTA |
| | ) | |
| ALABAMA DEPARTMENT OF | ) | (WO) |
| PUBLIC HEALTH, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on a motion by Alabama Department of Public Health ("Department") to dismiss the Second Amended Complaint brought by Plaintiff Mark McDowell. (Doc. No. 59.) The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Docs. No. 32-37.)

Upon review of Plaintiff's Second Amended Complaint, the motion, and the parties' briefs, the Court finds that the motion is due to be DENIED in part and GRANTED in part.

## I.     BACKGROUND[1]

Plaintiff is an African-American male who has been employed at the Department since 1986. He suffers from degenerative discs that limit his mobility, but he is able to perform his job with accommodations. At the time of the filing of the Complaint,[2] Plaintiff

---

[1] The Court provides this factual background as alleged in the Second Amended Complaint. (Doc. No. 58.)

[2] Plaintiff originally filed a complaint in this case on April 23, 2020. (Doc. No. 1.)

held the IT position of Data Processing Specialist.  This position is obsolete and has been for several years, but the Department did not reclassify Plaintiff like it did his colleagues.  In 2018 and 2019, Plaintiff applied for numerous promotions but was not selected.  He alleges he was qualified for those promotions, yet Caucasian male employees received those promotions over him.  Plaintiff also alleges that in 2018-2019 numerous negative comments were directed towards him which created a cold and hostile working environment.  For example, he was sometimes called "half a person" by his supervisor Terry Brown; Brown made a comment about receiving "two spoons when [he] needed two shovels" to Plaintiff and another colleague, both of whom had disabilities; and Brown once asked Plaintiff "how does he expect to get a promotion when he cannot move equipment without accommodations."  In October 2020, Plaintiff was promoted to the position of IT Specialist although the director of the division for whom he was working requested he be promoted to IT Specialist, Sr.

Plaintiff filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 23, 2019 and September 9, 2019.  Thereafter, Plaintiff filed suit claiming he was subjected to race discrimination in violation of Title VII of the Civil Rights Act of 1964[3] and Section 1981 of the Civil Rights Act of 1866,[4] and subjected to disability discrimination in violation of Section 504 of the Rehabilitation Act of 1973.[5]

---

[3] 42 U.S.C. § 2000e, *et seq*.

[4] 42 U.S.C. § 1981; 42 U.S.C. § 1981a.

[5]  29 U.S.C. § 701, *et seq*.

He named the Department, Brown, Mark Skelton, Ronald McClendon, and David Newman as defendants.[6]  Specifically, Plaintiff alleges he was denied promotions due to his race (Count I), subjected to a race-based cold and hostile working environment (Count II), and denied promotions due to his disability (Count III).  Plaintiff seeks declaratory relief, injunctive and equitable relief, compensatory damages, punitive damages, and attorneys' fees and costs.

The Department moves to dismiss this action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Doc. No. 59.)  The motion is fully briefed and ripe for disposition.  (*See* Docs. No. 59, 62, 63.)

## II.     JURISDICTION AND VENUE

This Court exercises subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.  The parties do not contest personal jurisdiction or venue, and the Court finds sufficient allegations to support both in the Middle District of Alabama.

## III.    STANDARD OF LAW

When evaluating a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff.  *Resnick v. AvMed*, *Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012).  To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

---

[6] These individual defendants are sued in their official and individual capacities.

3

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

Challenges to subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure take two forms: facial and factual. *See Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) ("A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack."). A facial attack questions subject matter jurisdiction based on the allegations in the complaint alone. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003). "On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion—the court must consider the allegations of the complaint to be true." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). This is not the case for a factual attack, which contests jurisdiction "in fact, irrespective of the pleadings. In resolving a factual attack, the district court may consider extrinsic evidence such as testimony and affidavits." *Morrison*, 323 F.3d 924, n.5 (citation omitted). Finally, "[t]he burden of proof on a motion to dismiss for lack of subject-matter jurisdiction is on the party asserting jurisdiction." *Murphy v. Sec'y, U.S. Dep't of the Army*, 769 F. App'x 779, 782 (11th Cir. 2019).

4

### IV.   DISCUSSION

A. Title VII Claims Against the Individual Defendants

The Department challenges the Title VII claims alleged in the Second Amended Complaint against individual defendants Brown, Skelton, McClendon, and Newman in their individual and official capacities in Counts I and II.  The Department argues there is no individual liability under Title VII and the official capacity suits against the individual defendants are unnecessary because Plaintiff also sued the Department.  (Doc. No. 59 at 5-6, 17-18.)

In response, Plaintiff withdraws his Title VII claim alleged in Count I against the individual defendants in their individual capacities.  (Doc. No. 62 at 9.)  However, as to his Title VII claim alleged in Count I against the individual defendants in their official capacities, Plaintiff argues the court "has the discretion to dismiss the claims against the individual defendants, but is not required to do so under Title VII."  (*Id*. at 7-8.)  Plaintiff does not address the Department's challenge to Count II on these grounds.  (*See* Doc. No. 62.)

The Court appreciates Plaintiff's withdrawal of Count I as alleged against the individual defendants in their individual capacities but notes he is remiss in not withdrawing the same for Count II.  It is well-established in the Eleventh Circuit that Plaintiff cannot recover on such individual capacity claims under Title VII.  *See Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991) ("Individual capacity suits under Title VII are … inappropriate."); *Dearth v. Collins*, 441 F.3d 931, 933 (11th Cir. 2006) (Title VII relief "is available against only the employer and not against individual employees

whose actions would constitute a violation of the Act....") (citation omitted); *Yeldell v. Cooper Green Hosp., Inc.,* 956 F.2d 1056, 1060 (11th Cir. 1992) ("[B]oth this court and the Fifth Circuit have held that Title VII actions ... may be brought only against individuals in their official capacity and/or the employing entity."). Accordingly, Plaintiff's Title VII claims alleged against the individual defendants in their individual capacities in Counts I and II are due to be dismissed.

As to the claims alleged against the individual defendants in their official capacities, the Court exercises its discretion and dismisses these claims. Because Plaintiff has already asserted Title VII claims against his employer, the Department, his Title VII claims against the individual defendants in their official capacities are redundant. *See Wheeles v. Nelson's Elec. Motor Servs.,* 559 F. Supp. 2d 1260, 1267 (M.D. Ala. 2008) ("However, when a plaintiff names both the employer and the individual supervisor in his official capacity, the supervisor may be dismissed from the action."). Hence, Plaintiff's Title VII claims alleged against the individual defendants in their official capacities in Counts I and II are due to be dismissed.

B. Rehabilitation Act Claim Against the Individual Defendants

Likewise, the Department argues the claim against the individual defendants in their individual and official capacities are due to be dismissed because the Rehabilitation Act does not provide a cause of action against individuals sued in their individual capacities and the suits against the individuals in their official capacities are duplicative. (Doc. No. 59 at 19.) Plaintiff did not respond to these arguments. (*See* Doc. No. 62.)

The Court agrees with the Department. "The Rehabilitation Act prohibits recipients of federal financial assistance from discriminating against individuals with disabilities." *Garrett v. Univ. of Ala. at Birmingham Bd. of Trustees*, 507 F.3d 1306, 1310 (11th Cir. 2007). Therefore, the Rehabilitation Act does not provide for suit against individuals. *See Pritchard v. S. Co. Servs.*, 102 F.3d 1118, 1119, n.7 (11th Cir. 1996) (liability under the Rehabilitation Act lies against employer, not individual officers of employer); *Badillo v. Thorpe*, 158 F. App'x 208, 211 (11th Cir. 2005) ("[T]here is no individual capacity liability under … [the] R[ehabilitation] A[ct]".) (citing *Garcia v. SUNY Health Scis. Ctr. Of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) ("[N]either Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials." (collecting cases)). *Accord Berkery v. Kaplan*, 518 F. App'x 813, 814-15 (11th Cir. 2013) (citing *Garcia*, 280 F. 3d at 107). Further, "[o]fficial capacity suits are suits against state agencies, not against the people through whom agencies act." *Hobbs v. Roberts*, 999 F.2d 1526, 1530 (11th Cir. 1993). "[O]fficial capacity suits represent 'only another way of pleading an action against an entity of which an officer is an agent,' and a victory against a named individual in an official capacity suit is " 'a victory against the entity that employs him.' " *Id.* (*quoting Kentucky v. Graham*, 473 U.S. 159, 167-68 (1985)). Where a plaintiff has named a state agency in the same suit, any claim against an officer of that agency in his or her official capacity is "duplicative" of the claim against the agency and is "due to be dismissed." *Ginwright v. Dep't of Revenue for Ala.*, No. 2:12-CV-473-WC, 2013 WL 1187943, at *4 (M.D. Ala. March 21, 2013). Thus, Plaintiff's claims here against the individual defendants in their official capacities are due to be dismissed since Plaintiff has

also brought suit against the relevant state agency, the Department. Consequently, Plaintiff's Rehabilitation Act claims alleged against the individual defendants in Count III in both their individual and official capacities are due to be dismissed.

    C. Allegations for Failure to Promote Claims under Title VII and Section 1981

The Department argues the Second Amended Complaint lacks "objective proof" in support of Plaintiff's qualifications for the promotions he sought. (Doc. No. 59 at 8.) The Department further argues the Second Amended Complaint is void of any factual allegations demonstrating Plaintiff was not promoted based on his race and factual content that would allow the court to draw the reasonable inference that the Department discriminated against him based upon his race. (*Id*. at 8-9.) Defendant asserts that Plaintiff broadly claims he was denied promotions, fails to describe the jobs for which he applied, and fails to allege his qualifications for those jobs. (*Id*. at 10.) The Department further asserts that Plaintiff fails to plead in his § 1981 claim alleged in Count I that but for race, he would not have suffered. (*Id*. at 11.)

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*., makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Section 1981 similarly prohibits intentional discrimination based on race in the employment context. *See* 42 U.S.C. § 1981(a); *Ferrill v. Parker Grp., Inc.,* 168 F.3d 468, 472 (11th Cir. 1999). Section 1983, which provides a private cause of action against a state actor who violates federal

8

constitutional or statutory rights, provides the exclusive remedy for a violation of § 1981 by a state actor. *See* 42 U.S.C. § 1983. *See Bryant v. Jones*, 575 F.3d 1281, 1288 n.1 (11th Cir. 2009) ("[Section] 1981 does not provide [a] cause of action against state actors; therefore, § 1983 constitutes the exclusive federal remedy for violation by state actors of the rights guaranteed under § 1981.").

"Both [Title VII and § 1981] have the same requirements of proof and use the same analytical framework." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). Hence, "the analysis of disparate treatment claims under § 1983 is identical to the analysis under Title VII where the facts on which the claims rely are the same. *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (citing *Abel v. Dudderly*, 210 F.3d 1334, 1338 (11th Cir. 2000)); *see also Stallworth v. Shuler*, 777 F.2d 1431, 1433 (11th Cir. 1985) ("Where, as here, a plaintiff predicates liability under Title VII on disparate treatment and also claims liability under sections 1981 and 1983, the legal elements of the claims are identical.").[7]

A plaintiff can establish a *prima facie* case of failure to promote by showing (1) he is a member of a protected class; (2) he was qualified for and applied for the promotion; (3) he was rejected despite his qualifications; and (4) other employees, who were equally

---

[7] Generally, courts use the same legal framework to analyze employment discrimination claims under Title VII, § 1981, and § 1983, but the Supreme Court has held recently that a plaintiff in a § 1983 action for a violation of § 1981 must "initially plead and ultimately prove that, but for race, [she] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, __ U.S. __, 140 S. Ct. 1009, 1019, 206 L. Ed. 2d 356 (2020).

or less qualified but were not members of the protected class, were promoted. *Sridej v. Brown*, 361 F. App'x 31, 34 (11th Cir. 2010) (citing *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004), *abrogated on other grounds by Lewis v. City of Union City*, 918 F.3d 1213, 1218 (11th Cir. 2019) (en banc)). As to his § 1981 claim, the plaintiff must plead that, "but for race, he would not have suffered the loss of a legally protected right." *Comcast Corp.*, 140 S. Ct. at 1019.

Yet, at this stage of litigation, Plaintiff is not required to make out a *prima facie* case with regard to each of his Title VII and § 1981 claims. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002) ("[W]e hold that an employment discrimination plaintiff need not plead a *prima facie* case of discrimination ... to survive respondent's motion to dismiss"); *Jackson v. Bellsouth Telecommunications*, 372 F.3d 1250, 1270–71 (11th Cir. 2004) (explaining that *McDonell Douglas* was an evidentiary rather than a pleading standard and that pleading a *McDonell Douglas prima facie* case is not necessary to survive a motion to dismiss). Plaintiff is, however, required to plead facts sufficient to raise the inference that he was discriminated against based upon his race. "[C]omplaints alleging discrimination must still meet the *Iqbal* and *Twombly* 'plausibility' standard." *Foster v. Auburn University Montgomery,* Civil Action No. 2:11-cv-503-WHA, 2011 WL 6140965, at *4 (M.D. Ala. Dec. 8, 2011) (citing *Edwards v. Prime, Inc.,* 602 F.3d 1276, 1300 (11th Cir. 2010)). "Therefore, in order to survive a motion to dismiss, the plaintiff's complaint must contain facts which allow the court to draw the reasonable inference that the defendant has engaged in intentional race discrimination." *Id*. (quoting *Iqbal*, 556 U.S. 662).

Equally, as to his § 1981 claim, the plaintiff must plead that, "but for race, he would not have suffered the loss of a legally protected right." *Comcast Corp.*, 140 S. Ct. at 1019.

Here, Plaintiff alleges that he is African–American, the State Personnel Department classified him as being in the top ten of its employees currently registered on the State Registry, throughout his employment with the Department he has "completed several highly skilled projects," and "as recently as May 2019," he was denied promotions "in which he was reachable on the State Register" while "less qualified white employees were selected for said promotions." (Doc. No. 58 at ¶¶ 12, 17, 18, 20.)  He names five white comparators whom he contends were promoted in his stead in 2018-2019. (Doc. No. 58 at ¶¶ 22, 26.)  While Plaintiff does not specifically discuss the necessary qualifications and application for each position, he alleges "his knowledge, skills, and longevity alone more than qualify him for any of the positions for which he . . . applied." (Doc. No. 58 at ¶ 25.)  As to the "but-for causation" required under § 1981, Plaintiff specifically alleges that he "has been repeatedly denied opportunities for promotion at the [Department], due to his African-American race." (Doc. No. 58 at ¶ 27.)  Further, he is not required at this stage to establish a *prima facie* case.  The allegations, albeit spare, are sufficient to survive the motion to dismiss and allow the failure to promote claims to proceed.  The motion to dismiss is due to be denied as to these claims.

D. Hostile Work Environment Claim

The Department contends Plaintiff's Title VII hostile work environment claim alleged in Count II should be dismissed because he failed to establish that the alleged harassment was severe or pervasive or based on his race.  (Doc. No. 59 at 14.)  The

Department further contends that this claim is not within the scope of Plaintiff's EEOC charge for failure to promote and is thus due to be dismissed. (*Id.* at 15.)

"A hostile work environment claim under Title VII requires proof that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Fernandez v. Trees, Inc.*, 961 F.3d 1148, 1152 (11th Cir. 2020) (internal quotation marks and citation omitted). "To establish a hostile work environment claim, a plaintiff must show that: (1) he belongs to a protected group; (2) he suffered unwelcome harassment; (3) the harassment was based on a protected characteristic of the employee, such as [race]; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for that environment under a theory of either direct liability or vicarious liability." *Id.* at 1153 (citation omitted). "[I]n order to establish that a workplace constitutes a hostile work environment, a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Butler v. Ala. Dep't of Transp.*, 536 F.3d 1209, 1214 (11th Cir. 2008) (quoting *Rojas v. Florida*, 285 F.3d 1339, 1344 (11th Cir. 2002)) (internal marks omitted).

Plaintiff alleges that he was "completely ostracized," "sometimes called 'half a person' by his supervisor" and that his supervisor made a comment about being given "two spoons when [he] need[s] two shovels" to Plaintiff "and another colleague, both of whom

12

had disabilities." (Doc. No. 58 at ¶ 28.) Plaintiff alleges no additional facts to raise the inference that he was subjected to a "workplace ... permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment" as contemplated by the Eleventh Circuit. *Butler, supra*, at 1214. Plaintiff also alleges no facts which support his conclusory allegation that he was completely ostracized. Nor does Plaintiff allege facts that support that this harassment was based on race. Plaintiff's allegation that the "half-a-person" comment is "historically contexted in blacks being considered 3/5th a person" is speculative as he provides no factual context of the incident to show that the statement was connected to his race. (*See* Doc. No. 58 at ¶ 40.) Further, this "3/5th a person" allegation is not incorporated in his hostile working environment claim. Plaintiff "repeats, realleges and incorporates by reference paragraphs 1-34" and "paragraphs 1-20" of the Second Amended Complaint to support his race-based hostile work environment claim, but did not incorporate paragraph 40 – the paragraph which contains the "3/5th a person" allegation – in his race-based hostile work environment claim. (*See* Doc. No. 58 at ¶¶ 40, 45, 46.) Thus, it appears that the allegations pertaining to being "half a person" and a spoon rather than a shovel, are tied to Plaintiff's disability. (*See* Doc. No. 58 at ¶ 28.) Hence, Plaintiff does not allege how the comments or the ostracism relate to his race or support an inference that they were based on his race.

Taken as true at the motion to dismiss stage, Plaintiff has alleged that his supervisor used offensive language towards him that is unacceptable in the workplace. It is never appropriate to call someone "half a person." Still, under the law of the Eleventh Circuit,

13

Plaintiff's allegations are not enough to survive the Department's motion to dismiss. *See McCurdy v. State of Ala. Disability Determination Serv.*, No. 2:13CV934-MHT, 2015 WL 5737103, at *14–15 (M.D. Ala. Sept. 30, 2015) (finding allegations that plaintiff "was subjected to epithet 'dumb nigger' by supervisor . . . on 'several occasions'" were not enough to survive defendant's motion to dismiss).[8] Accordingly, the Court agrees with the Department that Count II fails to state a claim for race-based hostile work environment. The motion to dismiss is due to be granted as to this claim.[9]

E. Disability Discrimination Claim

The Department contends that Plaintiff fails to state a plausible claim in Count III of disability discrimination under the Rehabilitation Act. (Doc. No. 59 at 18.) The Department argues Plaintiff has not alleged plausible facts demonstrating it regarded him as having a disability or that he was subjected to unlawful discrimination as a result of his perceived disability. (*Id*. at 18-22) The Department also argues that Plaintiff's Rehabilitation Act claim fails to allege that he was discriminated against solely by reason of his disability. (*Id*. at 19.) The Department further argues that Plaintiff's Rehabilitation Act claim is not within the scope of his EEOC charge, thus he failed to exhaust his administrative remedies. (*Id*.)

---

[8] If the allegations in *McCurdy* fall short then Plaintiff's must as well.

[9] Because Plaintiff has failed to state a plausible claim for a race-based hostile work environment, the Court need not reach the question of whether he exhausted his administrative remedies with regard to this claim.

"To establish a *prima facie* case of discrimination under the [Rehabilitation] Act, an individual must show that (1) he has a disability; (2) he is otherwise qualified for the position; and (3) he was subjected to unlawful discrimination as the result of his disability." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (quoting *Sutton v. Lader,* 185 F.3d 1203, 1207–08 (11th Cir. 1999)). "In the Eleventh Circuit, [i]t is not enough for a plaintiff to demonstrate that an adverse employment action was based partly on his disability. . . . Rather, under the Rehabilitation Act, a plaintiff must prove that he suffered an adverse employment action 'solely by reason of' his handicap." *Carastro v. Ala. Dep't of Pub. Health*, No. 2:18-CV-800-ECM, 2019 WL 2606933, at *3 (M.D. Ala. June 25, 2019) (internal citations omitted).

Here, Plaintiff alleges in Count III that he is a "qualified individual with a disability" as he "is an individual with degenerative discs that limit his mobility[,]" he was "qualified to perform the essential functions required for an IT Specialist, Sr. and WAN Manager, with reasonable accommodation[,]" and the Department denied him "a promotion because of his actual disability, his perceived disability or his record of impairment." (Doc. No. 58 at ¶¶ 49-51.) Plaintiff does not allege facts demonstrating that he was denied these promotions "solely by reason of his disability." *Ellis*, 432 F.3d at 1326. Moreover, Plaintiff's conclusory allegation that he was denied these promotions because of his actual/perceived disability is at best speculative. There are no factual allegations in Plaintiff's Second Amended Complaint from which the Court could infer a discriminatory motive or that the sole reason he was not promoted was because he was disabled. Plaintiff's allegation that his supervisor inquired "how does he . . . expect to get a promotion when he

15

. . . can't move equipment without the accommodations" does not state when this inquiry was made nor connect this statement from his supervisor to the denial of promotions for the positions of IT Specialist, Sr. and WAN Manager by the Department. (*See* Doc. No. 58 at ¶ 29.) The same applies to Plaintiff's allegation that his supervisor "sometimes called [him] half a person[.]" (*See* Doc. No. 58 at ¶ 29.) Accordingly, Count III of the Second Amended Complaint does not meet the minimum pleading standards for stating a disability discrimination claim under the Rehabilitation Act and thus is due to be denied.[10]

F. Time Barred Claims

The Department contends Plaintiff's racial discrimination claims includes allegations that are time barred under Title VII and § 1981 and thus subject to dismissal for lack of subject matter jurisdiction. (Doc. No. 59 at 12, 14.) The Department asserts that Plaintiff includes allegations in the Second Amended Complaint which address conduct in 1997 and contends that any cause of action under Title VII based on events that occurred before March 2, 2019 (180 days before the filing of Plaintiff's EEOC Charge) are time barred and due to be dismissed. (*Id*. at 13.) The Department further asserts that any cause of action under § 1981 alleged in the Second Amended Complaint which are based on events that occurred before April 23, 2018 are due to be dismissed as time barred. (*Id*. at 14.) Plaintiff did not address these arguments in response to the motion. (*See* Doc. No. 62.)

---

[10] Because Plaintiff has failed to state a plausible claim for discrimination under the Rehabilitation Act, the Court need not reach the question of whether he exhausted his administrative remedies with regard to this claim

The Court disagrees with the Department.  Although Plaintiff's Second Amended Complaint includes allegations regarding conduct which occurred prior to the 180 days window for his Title VII claim, he specifically limits his Title VII failure to promote claim to a six-month time period: February 2019 to August 2019.  (*See* Doc. No. 58 at ¶ 40.) Thus, Plaintiff's Title VII failure to promote claim is not time barred.  Further, Plaintiff's race discrimination claim under § 1981 is limited to the same six-month period as his Title VII failure to promote claim: February 2019 to August 2019.  (*See* Doc. No. 58 at ¶¶ 36, 37, 40.) This six-month period does not fall beyond the two-year statute of limitations for § 1981 claims.  *See Shows v. Morgan*, 40 F. Supp. 2d 1345, 1362 (M.D. Ala. 1999) (holding that "[a]ll § 1983 actions commenced in Alabama are subject to the two-year limitations period set forth in the general provisions of the 1975 Code of Alabama § 6–2–38" and "claims under § 1981 are treated the same as those under § 1983").  Accordingly, the Department's motion to dismiss Plaintiff's race discrimination claims for lack of subject matter jurisdiction is due to be denied.

G.  Punitive Damages Under Section 1981a

Finally, the Department seeks dismissal of Plaintiff's request for punitive damages under § 1981a.  (Doc. No. 59 at 23.)  Defendant asserts Title VII and § 1981 preclude recovery of punitive damages against government agencies.  (*Id.*)  Plaintiff did not respond to this argument.  (*See* Doc. No. 62.)

The Court agrees with the Department.  Although it is unclear from the Second Amended Complaint for which claims Plaintiff seeks punitive damages (*see* Doc. No. 58 at 13), Plaintiff cannot recover punitive damages against the Department for his claims.

Punitive damages cannot be claimed against state agencies pursuant to Title VII, thus insofar as Plaintiff seeks punitive damages against the Department in Count I, that claim is due to be dismissed.[11] *See* 42 U.S.C.A. § 1981a(b)(1) (stating, "A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision)...."). Accordingly, Plaintiff's request for punitive damages in Count I is due to be dismissed against the Department. *See Carastro,* 2019 WL 2606933, at *2 (granting motion to dismiss as to the punitive damages claims against the Department).[12]

## V. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant's Motion to Dismiss (Doc. No. 59) is GRANTED in part and DENIED in part as follows:

1. The motion is GRANTED as to Plaintiff's Title VII claim alleged in Count I against Terry Brown, Mark Skelton, Ronald McClendon, and David Newman in their official and individual capacities, and that claim is DISMISSED with prejudice against those defendants.

2. The motion is GRANTED as to Plaintiff's Title VII claim alleged in Count II against Terry Brown, Mark Skelton, Ronald McClendon, and David Newman in

---

[11] The same applies to Count II, but the Court has already concluded that this count is due to be dismissed.

[12] To the extent Plaintiff seeks punitive damages from the Department under the Rehabilitation Act in Count III, he cannot recover that relief. *See Barnes v. Gorman,* 536 U.S. 181, 189 (2002) (holding "[b]ecause punitive damages may not be awarded in private suits brought under Title VI of the 1964 Civil Rights Act, it follows that they may not be awarded in suits brought under ... the ADA and § 504 of the Rehabilitation Act."). However, the Court has already concluded that Count III is due to be dismissed for failure to state a claim.

their official and individual capacities, and that claim is DISMISSED with prejudice against those defendants.

3. The motion is GRANTED as to Plaintiff's Rehabilitation Act claim alleged in Count III against Terry Brown, Mark Skelton, Ronald McClendon, and David Newman in their official and individual capacities, and that claim is DISMISSED with prejudice against those defendants.

4. The motion is GRANTED as to Plaintiff's race-based cold and hostile work environment claim alleged in Count II, and that claim is DISMISSED with prejudice against all defendants.

5. The motion is GRANTED as to the Rehabilitation Act claim alleged in Count III against the Alabama Department of Public Health, and that claim is DISMISSED with prejudice.

6. The motion is GRANTED as to Plaintiff's request for punitive damages against the Alabama Department of Public Health, and that request is DISMISSED.

7. The motion is DENIED in all other respects.

8. This case will proceed on Plaintiff's race discrimination claims alleged under Title VII and 42 U.S.C. § 1981 in Count I against the Alabama Department of Public Health, and race discrimination claim alleged under 42 U.S.C. § 1981 in Count I against Terry Brown, Mark Skelton, Ronald McClendon, and David Newman.

DONE this 31st day of March, 2022.

/s/ Jerusha T. Adams
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE