IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MARK MCDOWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:20-cv-280-JTA |
| | ) | |
| ALABAMA DEPARTMENT OF | ) | (WO) |
| PUBLIC HEALTH, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

### I.      INTRODUCTION

On April 23, 2020, Plaintiff Mark McDowell filed this employment discrimination action against his former employer, Defendant Alabama Department of Public Health ("ADPH"), and Defendant ADPH's employees[1] Terry Brown, Mark Skelton, Ronald McClendon, and David Newman. (Doc. No. 1.) Plaintiff's remaining claims involve alleged discriminatory failure to promote in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. ("Title VII").

The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Docs. No. 32 through 37.) Before the Court are the following motions: Defendants' Motion for Summary Judgment (Doc. No. 82), Plaintiff's

---

[1] In his Second Amended Complaint, Plaintiff alleges that Defendant Brown is his direct supervisor. (Doc. No. 58 at ¶ 8.) Defendants Skelton, McLendon, and Newman participated in or facilitated at least some of the hiring decisions at issue in Plaintiff's Second Amended Complaint. (*See, e.g*., Doc. No. 81-20 at 6; Doc. No. 81-27; Doc. No. 81-28; Doc. No. 81-34.)

Motion in Opposition to Defendants' Motion for Summary Judgment (Doc. No. 94), Defendants' Motion to Strike the Affidavit of Sheila Duncan (Doc. No. 96), and Plaintiff's Motion to Show Cause (Doc. No. 98). For the reasons stated below, Defendants' motion for summary judgment (Doc. No. 82) is due to be GRANTED, Plaintiff's Motion to Show Cause (Doc. No. 98) is due to be GRANTED, and the remaining motions (Docs. No. 94, 96) are due to be DENIED.

## II.     JURISDICTION AND VENUE

This Court exercises subject matter jurisdiction over Plaintiff's Title VII and § 1981 claims pursuant to 28 U.S.C. § 1331. The parties do not contest personal jurisdiction or venue, and the Court finds sufficient allegations to support both in the Middle District of Alabama.

## III.     STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Palm v. U.S.*, 904 F. Supp. 1312, 1314 (M.D. Ala. 1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing

there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324. A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita v. Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson*, 477 U.S. at 255. After the nonmoving party has responded to the motion for summary judgment, the Court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(e). As stated by the Court in *Celotex*, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial," the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 322.

The existence of cross-motions for summary judgment does not affect the applicable Rule 56 standard. *U.S. Aviation Underwriters, Inc. v. Yellow Freight Sys., Inc.*, 296 F. Supp. 2d 1322, 1330 (S.D. Ala. 2003) (citing *Gerling Global Reinsurance Corp. of Am. v.*

3

*Gallagher*, 267 F.3d 1228, 1233 (11th Cir. 2001)). The Court considers each motion separately and need not necessarily grant one or the other. *Id.* ("Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." (quoting *U.S. v. Oakley*, 744 F. 2d 1553, 1555 (11th Cir. 1984))). The existence of cross-motions, however, may indicate the parties' belief that there is agreement on the material facts. *Id.*

## IV.    PROCEDURAL HISTORY

Plaintiff filed his Complaint on April 23, 2020. (Doc. No. 1.) On July 14, 2020, Plaintiff filed an Amended Complaint, and, on March 29, 2021, Plaintiff filed a Second Amended Complaint. (Docs. No. 20, 58.) In the Second Amended Complaint, Plaintiff asserted the following claims against Defendant ADPH and against the individual Defendants in both their individual and official capacities: a Title VII and § 1981 claim for racially discriminatory failure to promote Plaintiff "[d]uring February 2019 through August 2019," (Doc. No. 58 at 10 ¶ 40), a Title VII claim for a racially hostile work environment, and a claim for disability discrimination in violation of the Rehabilitation Act, 29 U.S.C. § 701 *et seq*. Defendant filed a Motion to Dismiss the Second Amended Complaint. (Doc. No. 59.) After briefing on the Motion to Dismiss was completed, the Court entered an Order granting the motion in part and denying it in part, dismissing all claims except the following: (1) Plaintiff's race discrimination failure-to-promote claims alleged under Title VII and 42 U.S.C. § 1981 in Count I of the Second Amended Complaint against the Alabama Department of Public Health, and (2) Plaintiff's race discrimination

4

failure-to-promote claim alleged under 42 U.S.C. § 1981 in Count I against Terry Brown, Mark Skelton, Ronald McClendon, and David Newman.

On December 6, 2022, Defendants filed a Motion for Summary Judgment on Plaintiff's remaining claims. (Doc. No. 82.) On January 6, 2023, Plaintiff filed a Motion in Opposition to Defendants' Motion for Summary Judgment (Doc. No. 94), along with a brief in opposition to the motion for summary judgment (Doc. No. 94-1) and eight supporting exhibits (Docs. No. 94-2 through 94-9). One of Plaintiff's supporting exhibits was an affidavit by Sheila Duncan, former State Home Care Director for Defendant ADPH. (Doc. No. 94-5.) On January 12, 2023, Defendants filed a Motion to Strike the Affidavit of Sheila Duncan. (Doc. No. 96.) On June 9, 2023, Plaintiff filed a Motion to Show Cause, in which he outlined his opposition to Defendants' Motion to Strike. (Doc. No. 98.)

The pending motions have been briefed and are ripe for disposition.

## V.   FACTS[2]

Plaintiff is an African-American male who began working for Defendant ADPH in December 1987 as a laborer in the mailroom under the merit system, and he held several

---

[2] Where evidence conflicts, the facts are set forth here in the light most favorable to the nonmoving party. *Sears v. Roberts*, 922 F.3d 1199, 1209 (11th Cir. 2019). Further, the facts set forth in this Memorandum Opinion and Order are drawn from the evidentiary materials submitted and cited by the parties on summary judgment. Fed. R. Civ. P. 56(c)(1), (3). In addition, because of Plaintiff's overwhelming reliance on the allegations in the Second Amended Complaint rather than on evidentiary submissions, the Court cites occasionally to the unverified Second Amended Complaint, but only for background information that appears to be undisputed, for nondispositive facts that both parties take for granted as true without citing supporting evidence, or merely for the fact that the allegations were made in the Second Amended Complaint. Fed. R. Civ. 56(c)(1); *White v. Berger*, 769 F. App'x 784, 789 (11th Cir. 2019) ("The party opposing summary judgment may not rely solely on the pleadings, but must proffer depositions, documents, affidavits, interrogatory answers, or other materials, to show that a genuine issue exists for trial." (citing *Smith v. Fla. Dep't of Corr.*, 713 F.3d 1059, 1063 (11th Cir. 2013))).

other positions at ADPH thereafter. (Doc. No. 81-2; Doc. No. 81-4 at 3; Doc. No. 94-6 at 3.) Beginning in October 1997, Plaintiff held the position of Data Processing Specialist (Doc. No. 81-3.) In October 2020, he was reclassified as or placed in the position of an IT Specialist within Defendant ADPH's HIV division. (Doc. No. 81-4 at 12; Doc. No. 81-21; Doc. No. 81-35.)

Effective May 16, 2019, Josh McCartha,[3] who allegedly is Caucasian, was promoted to IT Systems Specialist as Network Security Manager. (Doc. No. 58 at 26; Doc. No. 81-14 at 2 ¶ 6; Doc. No. 81-29.) According to Defendant James David Newman, who was Plaintiff's Reviewing Supervisor from 2014 to 2019 and had personal knowledge of the matter, McCartha's promotion was a reallocation of a position he already held, and McCartha was qualified to complete the job duties of the Network Security Manager position upon reallocation. (Doc. No. 81-24; *see also* Doc. No. 81-17 at 10; Doc. No. 81-18 at 3-5.) McCartha also had ten years of previous employment in IT Security and Technical Support and more than four years of experience in IT Security at ADPH, as well as an Associate Degree in Computer Science. (Doc. No. 81-24.) Plaintiff was not selected for the IT Systems Specialist Network Security Manager position because McCartha's promotion was a reallocation of his position. (*Id.*) In the department of ADPH in which Plaintiff worked, reallocated positions automatically went to the incumbent without an application and interview process. (Doc. No. 81-17 at 10.)

---

[3] Though spelled "McCarthy" in Plaintiff's Second Amended, the correct spelling of this individual's last name appears to be "McCartha." (Doc. No. 81-4.)

6

According to Plaintiff's deposition testimony, before being selected to the IT Systems Specialist position, McCartha had received training that Plaintiff had not received on certain computer systems because McCartha "had been working on those systems for a while." (Doc. No. 94-2 at 2.)

Effective June 1, 2019, Defendant McLendon, who is Caucasian, was promoted to WAN Manager, which is classified as a Senior IT Specialist position.[4] (Doc. No. 81-19; Doc. No. 81-33.) The WAN Manager position required "[e]xtensive supervisory experience … because the position manages a staff of approximately sixteen IT Employees." (Doc. No. 81-9 at 2 ¶ 5.)

Plaintiff also applied for the WAN Manager position. (Doc. No. 81-9.) Plaintiff "felt like [he] was more qualified" for the WAN Manager position than Defendant McLendon and that "race could be the only factor" in Defendant McLendon's selection for the position. (Doc. No. 81-4 at 10.) Regina Patterson, who is director of ADPH's Bureau of Information Technology and who has been in Plaintiff's supervisory chain of command since 2015, was part of the team that selected Defendant McLendon for the WAN Manager position. (Doc. No. 81-9 at 1-2 ¶¶ 1-5.) The team selected Defendant McLendon because he had "30 years [of] Telecommunications experience and over 20 years [of] supervisory experience[,] both factors that [they] deemed important for this position." (*Id.*) Patterson

---

[4] Plaintiff's Second Amended Complaint contains allegations that McLendon was twice promoted: once in May 2018 to the position of IT Specialist, Sr., and once in February or early March 2019, to the supervisory position of WAN Manager. (Doc. No. 58 at 6.) Plaintiff submitted no evidence to this effect, so the discrepancy does not give rise to a material factual dispute. Fed. R. Civ. P. 56(c).

noted that Plaintiff made an error in his interview when he stated that he learned VoIP while Defendant ADPH was headquartered at Normandale, which could not have been possible because Defendant ADPH began using VoIP in 2002, at least five years after it relocated its headquarters to the RSA Tower in Montgomery, Alabama. (*Id*.) In addition, in his WAN Manager interview, Plaintiff cited experience with old legacy (outdated) systems that "had not been used in over twenty years." (*Id*.) In its responses to interrogatories, Defendant ADPH stated that it hired Defendant McLendon for the WAN Manager position for the following reasons:

> The [WAN Manager] position requires much supervising skill and experience supporting WAN/LAN networks. There were 10 people interviewed for the position. The person hired (Ronnie McLendon) had over 25 years of experience in Telecommunications as well as over 15 years of experience supervising at the time of the interview. McLendon was part of the team that implemented and continues to support the Voice over IP (VoIP) for the Department since its inception in 200[2].[5] While in the interview, Plaintiff stated he learned some Voice over IP (VoIP) while at Normandale (the previous location of the Department before relocating to the RSA Tower) which would have been close to [five] years before it was actually in use at the Department. Systems that Plaintiff said he had experience with are old legacy systems that have not been used in years such as System 36 and 38. Those systems were not a need or requirement for any positions being interviewed. He did not have the experience needed to know the process and requirements need[ed] to set up a new WAN site that McLendon had. McLendon had experience with Cisco Call Manager for managing the Department's VoIP and had configured the routers for health departments. Plaintiff had none of this experience.

(Doc. No. 81-7 at 5.)

---

[5] Patterson clarified that Defendant ADPH began using VoIP in 2002, not 2006 as erroneously stated in Defendant ADPH's interrogatory response. (Doc. No. 81-9 at 1-2, ¶ 3.)

On January 7, 2020, Defendant ADPH promoted Brian Takacs,[6] allegedly a Caucasian person, to the position of IT Systems Specialist to serve as County Support Team Supervisor. (Doc. No. 58 at 7 ¶ 26; Doc. No. 81-9 at 1 ¶¶ 2, 7; Doc. No. 81-36.) The position required "a well[-]rounded individual with a lot of technical knowledge" "who could answer technical questions and provide guidance without assistance." (Doc. No. 81-7 at 5.) Three individuals, including Plaintiff, interviewed for the position. (*Id.*) At that time, Takacs had worked for Defendant ADPH for ten years, all of them with the County Support Team. (Doc. No. 81-9 at 2 ¶ 6; Doc. No. 81-23.) Patterson provided the following reasons for the selection of Takacs for the position:

> During his interview, Plaintiff stated that he had Vm Ware (virtualization technology) experience; however, he only watched Vsphere being used by county support personnel. Watching V sphere does not equate to Vm Ware experience. Plaintiff also had no experience with SilverPeaks. These devices were only used by the County Health Departments and supported by the IT County Support Team. Takacs had set[]up, configured, installed, and supported VMware servers and SilverPeaks network optimizers at many County Health Department[s]. Only Takacs and Skelton had SilverPeaks experience. Plaintiff did not have the necessary experience with network switches, servers, or network optimizers. Takacs had that experience. At the interview, Plaintiff stated he did not have experience with the newer server operating system, *i.e.*[,] Windows Server 2016. Plaintiff stated that he did not have experience troubleshooting Cisco routers, switches, or access points….

> Skelton and McLendon selected Takacs for the position because in their considered business judgment, Takac[s]'s work experience in the IT County Support Team for the previous ten years, and his current knowledge of VMWare and SilverPeaks, made him the most qualified candidate for that position. I approved of their selection.

(Doc. No. 81-9 at 2-3 ¶¶ 8-9.)

---

[6] Takacs's name is spelled several different ways in the record; however, it appears that "Takacs" is the correct spelling of his name, so that is the spelling the Court will use. (Doc. No. 81-22.)

In his deposition, Plaintiff testified that Takacs had "received training" on some "systems before" because Takacs "had been dealing with those systems before." (Doc. No. 94-2 at 1.) Takacs had learned those systems while "working with the county team and with those systems for a while" in his previous position, and he had been trained to use those systems in order to perform his previous job duties. (*Id.* at 2.) Plaintiff contended that he had "learned a lot of that stuff … just by research and sitting with dummy machines and playing with them," but that he did not learn those systems "to the degree that [Takacs] knew" them. (*Id.* at 1.)

On August 23, 2019, Plaintiff filed an EEOC charge alleging he was subjected to race and disability discrimination when he was repeatedly denied promotions on several occasions, including when McLendon was promoted to IT Specialist, Sr., and on an unspecified date when Defendant Skelton was "promoted over [Plaintiff]," even though Plaintiff had completed a degree and Skelton had not. (Doc. No. 81-38 at 1-5.)

On January 24, 2020, the EEOC issued Plaintiff a right-to-sue letter concerning his August 2019 EEOC charge. (Doc. No. 81-15 at 2; Doc. No. 81-41.)

On November 16, 2020, Defendant ADPH chose Monty Carroll to serve as its Prattville Complex IT Manager. (Doc. No. 81-7 at 7; Doc. No. 81-20 at 11; Doc. No. 81-26.) According to Defendant ADPH, Plaintiff was not on the register[7] for the position at

---

[7] Defendant ADPH explains the "register" as follows:

> The State of Alabama Personnel Procedures Manual states in Section IV Page 37 and Page 38, "After classifications are established by the State Personnel Board, positions are approved, examinations are administered and scored, and the results are furnished to the Certification Division. The test results of candidates shown by name and ranked by score are called registers. It is the responsibility of this division

that time. (Doc. No. 81-20 at 11.) Defendant ADPH gave the following reasons for choosing Carroll for this position:

> Regina Patterson, Mark Skelton, and David Newman determined there was a need to have an IT manager to manage IT staff and support at the new Prattville Complex (the Department's State Lab, Emergency Preparedness, Radiation Control, and Emergency Medical Services divisions). Monty Carroll was chosen for this position because he was the Help Desk manager and served in the backup role to David Newman as RSA Tower IT Manager. Carroll had previously worked at the lab. Patterson, Skelton, and David Newman decided who in their business judgment was the best candidate for the Prattville Complex IT Manager.

(Doc. No. 81-7 at 8.)

On December 23, 2020, Plaintiff filed a second EEOC discrimination charge in which he contended he was subjected to race and disability discrimination when (1) Carroll was promoted to IT Specialist, Sr., and Plaintiff was not; (2) when a supervisor left Plaintiff's mid-year appraisal in his desk chair while he was on vacation, which left the information potentially available for others in the office to view; and (3) when Plaintiff was not promoted to IT Specialist, Sr., in the HIV Division, but was instead placed in the position of IT Specialist within the HIV Division. (Doc. No. 81-20 at 1-3.) The EEOC has not yet issued Plaintiff a right-to-sue letter concerning his second EEOC discrimination charge. (Doc. No. 81-16.)

---

to issue, upon request, a "Certification of Candidates," which is a list of available qualified applicants on the register. During the process of issuing certifications, employment rules established by federal court orders and state and federal laws are monitored and enforced."

(Doc. No. 81-34 at 11.)

In support of his motion for summary judgment, Plaintiff submitted the affidavit of Sheila A. Duncan, retired State Home Care Director from the Alabama Department of Public Health. (Doc. No. 94-5.) In her affidavit, Duncan alleged that, in a racially discriminatory manner, in unspecified departments, Defendant ADPH had trained unspecified individuals and promoted them into unspecified jobs that were not posted. (*Id.* at ¶¶ 6-7.) According to Duncan, "[t]his practice created a narrative that allowed the agency to select specific individuals, generally [W]hite males, to fill positions others would have qualified for." (*Id.*) Duncan further stated that she and an individual named Sharon Jordan had approached Patterson about a promotion for Plaintiff to "an IT Specialist Senior Position" in the HIV Department, and that Patterson had been "very resistant to [Plaintiff's] possible promotion." (*Id.* at ¶¶ 11-12.) Though Duncan did not state how she came to know the basis for Plaintiff's lack of promotion to IT Specialist, Sr., she nevertheless opined that he, like other unspecified "[B]lack males" who worked for Defendant ADPH in unspecified departments, was denied the promotion "because of … race." (*Id.* at ¶ 18.)

In a deposition, Patterson gave the following testimony:[8]

Q. Ms Patterson, how long did you say you've been at the agency?
A. 33 years.
Q. And you said you've never had a [B]lack male as a IT specialist, senior specialist; is that correct?
A. A specialist or say that again, please.
Q. Senior specialist, not just a specialist but a senior specialist, you stated earlier you have not had one; would that [be] correct?
A. I stated that because I can't recall one.

---

[8] In opposition to summary judgment, Plaintiff has provided only excerpts of deposition testimony; from these excerpts, it is not possible to discern true, full context of the testimony. Where context can be gleaned from the only slightly less abbreviated deposition excerpts submitted by Defendants, it will be provided in this Opinion.

….[9]

Q. And I asked you a few minutes ago, have you had any of your white male co-workers bring you or come to you about a [B]lack male to promote them to IT senior specialist?

A. No.

Q. And your answer was no.

A. That's correct.

Q. Now my question is, have you attempted to have any [B]lack males promoted to IT senior specialist?

A. No.

Q. Why is that?

A. None are qualified. I haven't had one that was qualified.

Q. What do they have to do to be qualified?

A. Have the right skills and knowledge and demonstrate experience.

Q. Dexter Grace doesn't have it?

A. He's not in a position to go -- no. He does not. No.

(Doc. No. 94-3.)

## VI.    DISCUSSION

A.    Defendants' Motion for Summary Judgment

To prevail on his Title VII and § 1981[10] claims of racially discriminatory failure to

promote, Plaintiff must "ultimately prove" that, but for his race, he would have been

---

[9] Here, the deposition excerpt Plaintiff provided omits a page. The Court has, therefore, omitted a question by counsel at the end of one page and an answer by the deponent at the top of the next page as provided by Plaintiff because the answer does not appear to be in response to the question, as there is a missing deposition page between them.

[10] As the undersigned previously explained,

"Both [Title VII and § 1981] have the same requirements of proof and use the same analytical framework." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). Hence, "the analysis of disparate treatment claims under § 1983 is identical to the analysis under Title VII where the facts on which the claims rely are the same. *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (citing *Abel v. Dudderly*, 210 F.3d 1334, 1338 (11th Cir. 2000)); see also *Stallworth v. Shuler*, 777 F.2d 1431, 1433 (11th Cir. 1985) ("Where, as here, a plaintiff predicates liability under Title VII on disparate treatment and also claims liability under sections 1981 and 1983, the legal elements of the claims are identical.").

promoted to one of the positions he sought, but was denied. *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020); *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). Plaintiff may do this in one of several ways: through direct evidence, through the familiar *McDonnell Douglas* burden-shifting framework, [11] or by establishing "'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'" *Osman v. Ala. State Univ.*, No. 2:21-CV-525-RAH, 2023 WL 3061834, at *9 (M.D. Ala. Apr. 24, 2023) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); quoting *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)).

---

*McDowell v. Alabama Dep't of Pub. Health*, No. 2:20-CV-280-JTA (Doc. No. 64), 2022 WL 988377, at *4 (M.D. Ala. Mar. 31, 2022)

[11] In a failure-to-promote case, the *McDonnell Douglas* burden-shifting framework operates as follows:

> Under the *McDonnell Douglas* framework, a plaintiff first must show an inference of discriminatory intent, and thus carries the initial burden of establishing a *prima facie* case of discrimination. *See McDonnell Douglas*, 411 U.S. at 802. The plaintiff's successful assertion of a prima facie case "creates a rebuttable presumption that the employer unlawfully discriminated against her." *EEOC v. Joe's Stone Crab, Inc*., 296 F.3d 1265, 1272 (11th Cir. 2002) (citing *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714 (1983)). Second, if the plaintiff successfully demonstrates a *prima facie* case, the burden then shifts to the employer to produce evidence that its action was taken for a legitimate, non-discriminatory reason. *See Joe's Stone Crab*, 296 F.3d at 1272. We proceed to the third step of the analysis once the employer meets its burden of production by proffering a legitimate, non-discriminatory reason, thereby rebutting the presumption of discrimination, and "[our] inquiry 'proceeds to a new level of specificity,' in which the plaintiff must show that the proffered reason really is a pretext for unlawful discrimination." *Id*. at 1272–73 (citing *Burdine*, 450 U.S. at 255–56). "Although the intermediate burdens of production shift back and forth, the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the employee remains at all times with the plaintiff." *Id*. at 1273.

*Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1162 (11th Cir. 2006).

Direct evidence is evidence that, "'if believed, proves … a fact without inference or presumption.'" *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997) (quoting *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 n.6 (11th Cir. 1987)). "Evidence that only suggests discrimination… or that is subject to more than one interpretation … does not constitute direct evidence." *Id.* Plaintiff cannot prevail on the basis of direct evidence of discrimination.[12] His case is circumstantial.

It is not entirely clear from Plaintiff's brief whether he relies on *McDonnell Douglas* or a "convincing mosaic" to present a circumstantial case sufficient to survive summary judgment; in fact, it appears he may be attempting both approaches. (Doc. No. 94-1 at 16-21.) That is, he appears to be attempting to use similarly-situated comparators of another race to prove discrimination under *McDonnell Douglas*, and he also appears to be attempting to establish a "convincing mosaic" with circumstantial evidence (such as suspicious timing or ambiguous statements) from which discrimination may be inferred,

---

[12] Plaintiff alleges in conclusory fashion that he has presented "direct evidence" of discrimination. (Doc. No. 94-1 at 20.) He does not cite the alleged "direct evidence," so the Court is left to guess what it might be. (*Id.*) As for Duncan's affidavit, to the extent that Duncan articulated her suspicion that Plaintiff was not promoted for discriminatory reasons, that suspicion was founded not on personal knowledge of the reasons for Plaintiff's nonpromotion, but on inferences drawn from Plaintiff's nonpromotion and an alleged history of discrimination against unspecified other individuals by unspecified decisionmakers in unspecified departments of Defendant ADPH. In Plaintiff's brief, though not in the section alleging he has direct evidence of discrimination, Plaintiff references Patterson's deposition testimony that she had not attempted to promote any Black males in her department to Senior IT Specialist because "none [we]re qualified," meaning none had "the right skills and knowledge and demonstrate[d] experience," which Plaintiff contends is the "most egregious" possible proof of discriminatory intent. (Doc. No. 94-1 at 20; Doc. No. 94-3.) At most, Patterson's testimony "only suggests discrimination" or is subject to more than one interpretation. It also could be interpreted to mean exactly what it says – that the reason no Black applicants had been promoted to Senior IT Specialist was because no qualified Black candidates had applied. Therefore, Patterson's testimony is not direct evidence of discrimination. *Merritt*, 120 F.3d at 1189.

evidence of systematically better treatment of similarly-situated employees, and pretext. *See Jenkins v. Nell*, 26 F.4th 1243, 1250 (11th Cir. 2022) (describing a method by which a plaintiff may present a "convincing mosaic" of evidence of discrimination (citing *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1185 (11th Cir. 2019))).

Under either of the two approaches Plaintiff appears to be attempting here, he must present "significantly probative evidence" from which a reasonable factfinder could find pretext in the employer's proffered nondiscriminatory reasons for promoting others instead of him. *Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006); *Jenkins*, 26 F.4th at 1250; *see also McDonnell Douglas*, 411 U.S. at 806. "A reason is not pretext for discrimination 'unless it is shown both that the reason was false, and that discrimination was the real reason.'" *Brooks*, 446 F.3d at 1163 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)). A plaintiff may show pretext either by showing "'directly … that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's pro[f]fered explanation is unworthy of credence.'" *Id*. (quoting *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005)).

For the sake of this discussion, the Court will assume, without deciding, that Plaintiff has presented substantial evidence sufficient to support a *prima facie* case under the *McDonnell Douglas* framework or, alternatively, that he has presented substantial evidence of "(1) suspicious timing, ambiguous statements, or other information from which discriminatory intent may be inferred, and (2) systematically better treatment of similarly situated employees" in support of a "convincing mosaic" approach. *Jenkins*, 26 F.4th at 1250 (citation and internal quotation marks omitted). However, as explained below,

Defendants have proffered evidence of legitimate, nondiscriminatory reasons for promoting other individuals to the positions Plaintiff sought for himself. Therefore, if Plaintiff has not supplied sufficient evidence from which a reasonable factfinder could conclude that the employer's proffered reasons for the promotions of others were pretextual, then Plaintiff cannot survive summary judgment.

Defendants submitted evidence of nondiscriminatory reasons for Josh McCartha's May 2019 promotion to IT Systems Specialist as Network Security Manager. Specifically, Defendants submitted evidence that McCartha's promotion was a reallocation of a position he already held, and that McCartha was qualified to complete the job duties upon reallocation. (Doc. No. 81-24; *see also* Doc. No. 81-17 at 10; Doc. No. 81-18 at 3-5.) Defendants also cited McCartha's previous ten years of employment in IT Security and Technical Support and more than four years of experience in IT Security at ADPH, as well as McCartha's Associate Degree in Computer Science. (Doc. No. 81-24.) Defendants further submitted evidence of a nondiscriminatory reason for not choosing Plaintiff for the position: Plaintiff was not selected for the Network Security Manager position because McCartha's promotion was a reallocation of the position he already held and, in the department of ADPH in which Plaintiff worked, reallocated positions automatically went to the incumbent without an application and interview process. (*Id*.; Doc. No. 81-17 at 10.) Further, according to Plaintiff's own deposition testimony, before being selected to the IT Systems Specialist position, McCartha had received relevant training that Plaintiff had not received on certain relevant computer systems because McCartha "had been working on those systems for a while" in his previous position. (Doc. No. 94-2 at 2.)

As evidence of pretext in McCartha's promotion, Plaintiff argues that Patterson's testimony that no Black males have been promoted to IT Systems Senior Specialist because none were qualified is a smoking gun proving discriminatory intent. (Doc. No. 94-1 at 20.) Plaintiff's argument is nonsensical for several reasons, including these: (1) Patterson's testimony was that qualification for the IT Systems Senior Specialist position, rather than race, was the reason for the promotional decisions; and (2) Patterson's testimony concerned promotions to the IT Systems Senior Specialist position, not the IT Systems Specialist[13] position to which McCartha (and eventually Plaintiff as well) was promoted. (Doc. No. 81-40; Doc. No. 94-3.) Plaintiff has simply failed to provide any evidence that Defendant ADPH's reasons for promoting McCartha to the IT Systems Specialist Network Manager position were pretextual or that racial discrimination was the true reason for the promotion decision.

With respect to McLendon's June 2019 promotion to WAN Manager, Defendants provided evidence that, out of ten candidates, McLendon was chosen for promotion to the position for the following reasons:

> The [WAN Manager] position requires much supervising skill and experience supporting WAN/LAN networks. There were 10 people interviewed for the position. The person hired (Ronnie McLendon) had over 25 years of experience in Telecommunications as well as over 15 years of experience supervising at the time of the interview. McLendon was part of the team that implemented and continues to support the Voice over IP (VoIP) for the Department since its inception in 200[2]…. McLendon had experience with Cisco Call Manager for managing the Department's VoIP and had configured the routers for health departments. Plaintiff had none of this experience.

---

[13] In his brief, Plaintiff refers to McCartha's position as "IT Systems Specialist Associate." (Doc. No. 94-1 at 19.)

(Doc. No. 81-7 at 5.)

Defendants submitted evidence that Plaintiff was not promoted to WAN Manager for the following nondiscriminatory reasons:

> While in the interview, Plaintiff stated he learned some Voice over IP (VoIP) while at Normandale (the previous location of the Department before relocating to the RSA Tower) which would have been close to [five] years before it was actually in use at the Department. Systems that Plaintiff said he had experience with are old legacy systems that have not been used in years such as System 36 and 38. Those systems were not a need or requirement for any positions being interviewed. He did not have the experience needed to know the process and requirements need[ed] to set up a new WAN site that McLendon had.

(*Id*.)

To establish pretext in the reasons proffered for McLendon's promotion, Plaintiff compares his own experience and work history to McLendon's to argue that he was the more qualified candidate. (Doc. No. 94-1 at 18.) "[E]vidence showing an employer hired a less qualified applicant over the plaintiff may be probative of whether the employer's proffered reason for not promoting the plaintiff was pretextual." *Lee v. GTE Fla., Inc*., 226 F.3d 1249, 1253 (11th Cir. 2000). However, as the Eleventh Circuit noted in *Lee* and reiterated in *Brooks*, 446 F.3d at 1163 (quoting *Alexander v. Fulton Cty., Ga.*, 207 F.3d 1303, 1334 (11th Cir. 2000), *overruled on other grounds*, *Manders v. Lee*, 338 F.3d 1304, 1328 n. 52 (11th Cir. 2003), *Burke-Fowler v. Orange Cnty., Fla*., 447 F.3d 1319, 1323 (11th Cir. 2006)), in a failure-to-promote case, an argument that a plaintiff is merely more qualified than the qualified, chosen candidate is not alone sufficient to establish pretext, nor is evidence that merely calls into question the wisdom or soundness of the employer's

decision (at least not where the employer's proffered reason is one that would motivate a reasonable employer). "Instead, a plaintiff must show that the disparities between the successful applicant's and h[is] own qualifications were 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." *Denham v. Alabama State University*, No. 2:22-CV-185-SMD, 2023 WL 4239965, at *5 (M.D. Ala. June 28, 2023) (quoting *Cooper v. S. Co*., 390 F.3d 695, 732 (11th Cir. 2004), *overruled in part on other grounds*, *Ash v. Tyson Foods, Inc*., 126 S. Ct. 1195 (2006) (quoting in turn *Lee*, 226 F.3d at 1254)). Plaintiff gives no explanation or evidence why, in his view, the alleged disparities in his and McLendon's experience and work history are distinctions that make a material difference in their respective suitabilities for the WAN Manager position, much less why those differences are sufficient to create a factual issue as to pretext. Accordingly, Plaintiff cannot survive summary judgment as to his discrimination claim regarding McLendon's promotion to WAN Manager.

Defendants have presented evidence that Takacs was selected for the position of IT Systems Specialist to serve as County Support Team Supervisor in January 2020 for the following nondiscriminatory reasons:

> Skelton and McLendon selected Takacs for the position because[,] in their considered business judgment, Takac[s]'s work experience in the IT County Support Team for the previous ten years, and his current knowledge of VMWare and SilverPeaks, made him the most qualified candidate for that position.

(Doc. No. 81-9 at 2-3 ¶¶ 8-9.)

Further, Defendants have presented the following nondiscriminatory reasons why Plaintiff was not promoted to the IT Systems Specialist position as County Support Team Supervisor:

> During his interview, Plaintiff stated that he had Vm Ware (virtualization technology) experience; however, he only watched Vsphere being used by county support personnel. Watching V sphere does not equate to Vm Ware experience. Plaintiff also had no experience with SilverPeaks. These devices were only used by the County Health Departments and supported by the IT County Support Team. Takacs had set[]up, configured, installed, and supported VMware servers and SilverPeaks network optimizers at many County Health Department[s]. Only Takacs and Skelton had SilverPeaks experience. Plaintiff did not have the necessary experience with network switches, servers, or network optimizers. Takacs had that experience. At the interview, Plaintiff stated he did not have experience with the newer server operating system, *i.e.* Windows Server 2016. Plaintiff stated that he did not have experience troubleshooting Cisco routers, switches, or access points.

(*Id*.)

The County Support Team Supervisor position required "a well[-]rounded individual with a lot of technical knowledge" "who could answer technical questions and provide guidance without assistance." (Doc. No. 81-7 at 5.) In his deposition, Plaintiff admitted that Takacs had "received training" on some "systems before" because Takacs "had been dealing with those systems before." (Doc. No. 94-2 at 1.) According to Plaintiff, Takacs had learned those systems while "working with the county team and with those systems for a while," and Takacs had been trained to use those systems in order to perform his previous job duties. (*Id*. at 2.) Plaintiff contended that he himself had "learned a lot of that stuff … just by research and sitting with dummy machines and playing with them," but Plaintiff acknowledged that he did not learn those systems "to the degree that [Takacs] knew" them. (*Id*. at 1.)

On summary judgment, Plaintiff argues that his lesser qualifications for the County Support Team Supervisor position were themselves the result of discrimination because his supervisors denied requests he had been making "for years" to "train in other areas" outside of his job requirements and department. (Doc. No. 94-1 at 18-19.) In support of this argument, Plaintiff submits Duncan's affidavit stating that Defendant ADPH had deliberately placed unspecified White males in unspecified positions in unspecified departments to allow them to gain the experience needed for promotions to other unspecified positions, to the exclusion of Black candidates.[14] (Doc. No. 94-1 at 23 (citing Doc. No. 94-5).) However, Plaintiff has not presented *any* evidence that Takacs, who had worked exclusively in the County Support Team during the ten years he was employed at Defendant ADPH prior to his promotion, was discriminatorily hired to the County Support Team so that he could gain experience with the Team and its systems to provide him with a discriminatory advantage for an eventual promotion to County Support Team Supervisor. Thus, Plaintiff has not shown that Defendants discriminatorily hired Takacs as County Support Team Supervisor on the pretext that he was more qualified after first discriminatorily hiring him in another position where he could obtain the experience and training needed to become the most qualified County Support Team Supervisor candidate. Neither does Plaintiff bring either a claim for discriminatory lack of training or a claim for

---

[14] Defendants have moved to strike the Duncan affidavit cited by Plaintiff on grounds that the affidavit is not based on personal knowledge and does not comply with the requirements of Rule 56(c)(4) of the Federal Rules of Civil Procedure. (Doc. No. 96.) As stated more fully in Section V.B. of this Opinion, in ruling on the motion for summary judgment, the Court has considered the affidavit, as well as Duncan's lack of personal knowledge or information specifically pertaining to the reasons for nonpromotion of Plaintiff.

discriminatory failure to hire him to a County Support Team position that would have in turn provided him with the experience and training needed to win the County Support Team Supervisor position.

In addition, Plaintiff has not shown that his request for cross-training for another job was one that was regularly granted to White employees,[15] or that he was denied requests for cross-training on the basis of his race. Rather, the uncontradicted evidence on summary judgment, including Plaintiff's own deposition testimony, establishes that employees (including Takacs) gained relevant experience, training, and skills through carrying out their own job duties and requesting or receiving training needed for their own jobs and in their own division, not by cross-training for skills needed for other employees' jobs or in other divisions. (Doc. No. 81-4 at 7-8, 13-15, 20-21; Doc. No. 81-17 at 9-10; Doc. No. 94-2.)

Therefore, Plaintiff has failed to present evidence that undermines or demonstrates pretext in Defendants' proffered nondiscriminatory reasons for hiring Takacs as County Support Team Supervisor, and he cannot survive summary judgment as to this issue.

---

[15] Though not cited by Plaintiff, Defendant submitted deposition excerpts in which Plaintiff testified that he "requested some of the cross-training with the county team," though he "wasn't part of the county team," and this request was denied, despite the fact that Plaintiff "felt there should have been some way where [he] would be able to be trained on some of the tasks, where you could then determine whether or not you were going to allow me to go further." (Doc. No. 81-4 at 21.) Plaintiff also testified that "cross-training" was allowed if approved by supervisors for "opportunities and tasks that are there in that division." (Doc. No. 81-4 at 20-21.) However, Plaintiff has not provided any evidence that "cross-training" was allowed for skills that were not needed by an employee to perform their own job. Rather, Defendants provided uncontroverted evidence that "cross-training" (in terms of teaching employees job skills for others' jobs) has never been provided in the IT department. (*Id.*)

In his Second Amended Complaint, Plaintiff has also alleged that he was subjected to discrimination when he was not hired to the IT Specialist position filled by Carroll in November 2020.[16] (Doc. No. 58 at 7 ¶ 26, 8 ¶ 31; Doc. No. 81-20 at 11.) Plaintiff makes no argument and presents no evidence that his race discrimination claims for failure to promote should be allowed to proceed past summary judgment with respect to Carroll's allegedly discriminatory promotion or as to any other positions[17] to which he may have alluded to in the Second Amended Complaint. "There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resol. Tr. Corp. v. Dunmar Corp*., 43 F.3d 587, 599 (11th Cir. 1995). Instead, the "onus is on the parties to formulate" their arguments on summary judgment.

---

[16] On summary judgment, Defendants argue that claims based on Carroll's promotion are due to be dismissed due to failure to exhaust administrative remedies and because Plaintiff has yet to receive a right-to-sue letter from the EEOC with respect to the Carroll's allegedly discriminatory promotion. (Doc. No. 81 at 8-9.) Plaintiff did not respond to Defendants' argument on this point, nor did he offer any evidence to back up his factual allegations regarding Carroll's promotion, relying instead entirely on the allegations in his Second Amended Complaint. (Doc. No. 94-1 at 10.) *See* Fed. R. Civ. P. 56(c)(1)(A). Further, Carroll appears to have been promoted well after the "February 2019 through August 2019" time frame alleged in the race-based failure-to-promote claim in Plaintiff's Second Amended Complaint, after Plaintiff received his right-to-sue letter regarding his first EEOC charge, and while Plaintiff has yet to receive a right-to-sue letter regarding his second EEOC charge, which concerned Carroll's promotion. (Doc. No. 81-20 at 11; Doc. No. 81-26.).

[17] Plaintiff also references a Bradley Baker in his Second Amended Complaint. (Doc. No. 58 at 7 ¶ 26.) However, no reference to Baker is included in Plaintiff's race-based failure-to-promote claim in his Second Amended Complaint. (Doc. No. 58 at 9-10 ¶¶ 35-44). Further, Baker appears to have been promoted after Carroll, who, like Baker, was promoted after the "February 2019 through August 2019" time frame alleged in the race-based failure-to-promote claim in Plaintiff's Second Amended Complaint, and after Plaintiff received his right-to-sue letter regarding his first EEOC charge. (Doc. No. 58 at 10 ¶ 40; Doc. No. 94-6 at 14.) Plaintiff makes only a passing reference to Baker in his summary judgment brief, supported not by any citation to evidence, but by a citation to the allegations in his Second Amended Complaint. (Doc. No. 94-1 at 10.). *See* Fed. R. Civ. P. 56(c)(1)(A). It appears Plaintiff never intended to base his racially discriminatory failure-to-promote claim in this action on Baker's promotion.

*Id.*; *see Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994) (holding that a district court "could properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment"); *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 260 (1st Cir. 1999) (holding that, on summary judgment, "[t]he district court is free to disregard arguments that are not adequately developed"); *Robinson-Miller v. Montgomery Cnty. Bd. of Educ.*, No. 2:18-CV-512-JTA, 2022 WL 13701300, at *15 n.15 (M.D. Ala. Oct. 21, 2022) (declining to consider arguments not raised in a brief in opposition to summary judgment).

Accordingly, Plaintiff's § 1981 and Title VII claims for discriminatory failure to promote fail as a matter of law on grounds that Plaintiff has not presented substantial evidence that the nondiscriminatory reasons proffered for his nonpromotion were pretextual. Therefore, all Defendants are entitled to summary judgment on Plaintiff's remaining claims.

B.    Other Pending Motions

Plaintiff filed a Motion in Opposition to Defendants' Motion for Summary Judgment. (Doc. No. 94.) Whether or not Plaintiff intended his motion to serve as a cross-motion for summary judgment, the motion is due to be denied for the same reason that Defendants' Motion for Summary Judgment is due to be granted – namely, that Defendants presented unrebutted evidence of legitimate, nondiscriminatory reasons for promoting other individuals instead of Plaintiff.

Defendants filed a Motion to Strike the Affidavit of Sheila Duncan. (Doc. No. 96.)

The motion "is not a pleading subject to a motion to strike under the Federal Rules of Civil Procedure. Fed R. Civ. P. 7(a); Fed R. Civ. P. 12(f)." *Carter v. City of Montgomery*, No. 2:15-CV-555-WKW, 2015 WL 13846254, at *1 (M.D. Ala. Nov. 24, 2015). Nevertheless, "as has been noted in other contexts, courts in this Circuit and elsewhere routinely overlook the technicality that the Federal Rules specifically provide only for motions to strike pleadings and instead rule on the substance of the motion." *Id.* (citing *Argonaut Midwest Ins. Co. v. McNeilus Truck & Mfg., Inc.*, No. 1:11-CV-3495-TWT, 2013 WL 489141, at *1 (N.D. Ga. Feb. 8, 2013) (collecting cases)).

In substance, in Defendants' Motion to Strike the Affidavit of Sheila Duncan (Doc. No. 96), they seek to have the Court exclude or entirely disregard Duncan's affidavit, pointing out numerous deficiencies in the affidavit and arguing that the affidavit is not based on personal knowledge, does not set out facts that would be admissible in evidence, and does not demonstrate Duncan's competence to testify as required by Rule 56(c)(4) of the Federal Rules of Civil Procedure. Duncan's competence to testify can be gleaned from her affidavit. *See* Fed. R. Evid. 601 ("Every person is competent to be a witness unless these rules provide otherwise."). Therefore, in granting Defendants' Motion for Summary Judgment, the Court has considered Duncan's affidavit to the extent that it is "made on personal knowledge [and] set[s] out facts that would be admissible in evidence." Fed. R. Civ. P. 56(c)(4).

However, Duncan does present at least one conclusory opinion in her affidavit that is not supported by personal knowledge and, therefore, is due to be excluded pursuant to Rule 56(c)(4). *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence

is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony."); Fed. R. Evid. 701 ("If a witness is not testifying as an expert,[18] testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.").

Specifically, to the extent that Plaintiff contends Duncan's affidavit proves that he was not promoted because of race or because of an alleged practice of hiring White males into positions where they would receive the experience needed to qualify them for promotions, Plaintiff's reliance on Duncan's affidavit is misplaced. As Plaintiff recognizes, "[t]he basis for the affiant's personal knowledge must be stated in the affidavit." (Doc. No. 98 at 2 (citing *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985)).) Further, "conclusory allegations without specific supporting facts have no probative value." *Evers*, 770 F.2d at 986. Duncan did not allege that she had personal knowledge why individuals were promoted to the specific positions for which Plaintiff unsuccessfully sought a promotion. Neither did Duncan state that she had personal knowledge why Plaintiff was ultimately promoted to IT Specialist in the HIV Department rather than to the position of IT Specialist Senior. Duncan, a former State Home Care Director for Defendant ADPH, did not even state that she had personal knowledge or competence to testify regarding

---

[18] Plaintiff does not contend that Duncan prepared the affidavit as an expert witness.

hiring practices in Defendant ADPH's IT Division. At most, she stated that Defendant ADPH's practice of training and promoting unspecified individuals into unspecified jobs in unspecified divisions – jobs that were not posted – "created a narrative that allowed [Defendant ADPH] to select specific individuals, generally [W]hite males, to fill positions other individuals would have qualified for." (Doc. No. 94-5 at ¶¶ 6-7.) Notably, Duncan did not offer any information or demonstrate any personal knowledge as to whether that alleged practice or "narrative" had anything to do with McCartha's promotion.[19] Duncan also personally observed that Patterson was "very resistant to [Plaintiff's] possible promotion" to an IT Specialist Senior position in the HIV Department. (*Id.* at ¶ 12.) However, Duncan did not allege any personal knowledge of specific facts as to *why* Patterson was resistant to promoting Plaintiff to that position. Therefore, Duncan's affidavit lacks the necessary indicia of personal knowledge or evidentiary admissibility to support Duncan's conclusory opinion that, "[b]ased on my experience and what I witnessed, [B]lack males, such as [Plaintiff] were not promoted or were advanced because of their race." (*Id*. at ¶ 18.) Because Duncan simply did not articulate any basis of personal knowledge for her opinion that race prevented Plaintiff from being promoted, the Court accorded no weight to that specific conclusion.

However, the Court does not find it necessary to strike Duncan's affidavit in its entirety simply because it contains at least one conclusory opinion that is not supported by

---

[19] Plaintiff applied and was interviewed for the positions to which McLendon and Takacs applied; thus, in any event, those jobs could not have been part of any scheme to promote White individuals to positions that had not been posted.

personal knowledge. In any event, Defendants have not been prejudiced by the Court's consideration of Duncan's affidavit, as the affidavit is not sufficient to preclude summary judgment in Defendants' favor. Therefore, Defendants' Motion to Strike the Affidavit of Sheila Duncan (Doc. No. 96) is due to be denied. *See Lombard v. Baker*, No. 2:22-CV-328-ECM-JTA, 2023 WL 2378570, at *2 (M.D. Ala. Mar. 6, 2023) (denying a motion to strike an affidavit offered in opposition to a motion for summary judgment due to the affiant's lack of personal knowledge because the affidavit had no effect on the recommendation to grant summary judgment).

Plaintiff's Motion to Show Cause (Doc. No. 98) requests nothing more than denial of Defendants' Motion to Strike the Affidavit of Sheila Duncan (Doc. No. 96). Because the Court has considered Duncan's Affidavit and because Defendants' Motion to Strike the Affidavit of Sheila Duncan (Doc. No. 96) is denied, Plaintiff's Motion to Show Cause will be granted, albeit with the caveat that the Court does not agree with Plaintiff's position that Duncan demonstrated personal knowledge necessary to support every single statement in her affidavit, and the Court has considered her affidavit accordingly.

## VII.   CONCLUSION

For the reasons stated in this Memorandum Opinion and Order, it is ORDERED as follows:

1.   Defendants' motion for summary judgment (Doc. No. 82) is GRANTED.

2.   Plaintiff's § 1981 claims in Count I of the Second Amended Complaint against all Defendants for racially discriminatory failure to promote are DISMISSED WITH PREJUDICE.

3.     Plaintiff's Title VII claim in Count I of the Second Amended Complaint against the Alabama Department of Public Health for racially discriminatory failure to promote is DISMISSED WITH PREJUDICE.

4.     Plaintiff's Motion in Opposition to Defendants' Motion for Summary Judgment (Doc. No. 94) is DENIED.

5.     Defendants' Motion to Strike the Affidavit of Sheila Duncan (Doc. No. 96) is DENIED.

6.     Plaintiff's Motion to Show Cause (Doc. No. 98) is GRANTED.

7.     This action is DISMISSED WITH PREJUDICE.

A separate judgment will issue.

DONE this 10th day of July, 2023.


_Jerusha T. Adams_
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE